# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                            No. CR 16-3868 JAP

DENNIS GRIEGO,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Dennis Griego (Defendant) is charged with being a felon in possession of a semi-automatic pistol and ammunition.[1] On July 27, 2017, Defendant filed a motion to suppress all statements he made to law enforcement on or about April 29, 2016, when he was arrested.[2] Defendant argues that the *Miranda* warnings he received prior to interrogation were facially invalid and therefore that any waiver of his rights he made based on the deficient warnings was not knowing, voluntary, or intelligent. The Motion is fully briefed.[3] Finding that the *Miranda* warnings were adequate, the Court will deny the motion.

### I.     BACKGROUND

Defendant is a convicted felon who was on parole when law enforcement pursued him for operating a stolen vehicle on April 27, 2016. He eluded the police that day, but they obtained an arrest warrant and went to his residence on April 29, 2016. Defendant was taken into custody after the Albuquerque Police Department (APD) SWAT team arrived and used gas to force him

---

[1] *See* INDICTMENT (Doc. No. 2).
[2] *See* MOTION TO SUPPRESS STATEMENT (Doc. No. 24) (Motion).
[3] *See* UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENT (Doc. No. 25) (Response); REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS (Doc. No. 31) (Reply).

1

to exit the residence. Defendant was then removed to a location approximately half a mile from Defendant's residence. There, Defendant spoke to APD Detective Whitney Burton while Defendant was in the back of a police car. Detective Burton testified that Defendant was able to converse intelligently and did not appear to be suffering any adverse effects from his exposure to the gas.

Detective Burton advised Defendant of his *Miranda* rights before she began questioning him, but she did not read the rights to him because she did not have the written form. She said, "you're in custody . . . so before I ask you anything, I have to read you your rights, okay? . . . I think I actually left them in the car." Detective Burton proceeded to inform Defendant of his rights from her memory. She said:

> So you have the right to remain silent. Anything you say can be used against you in court. If you can't afford an attorney, one will be appointed to you at no cost. Uh, at any time during questioning you want to answer my questions without an attorney present, you can put your rights into effect and at any time . . . as far as uh, if you want a lawyer at any time and you wanted to cease ah, questions to stop . . . we can do that at any time. Do you understand?

To which Defendant replied, "I'll probably get up for like a minute. Yes, I do understand, sorry." Detective Burton then said, "Okay. Do you wanna talk to me?" Defendant answered, "I don't know. What are your questions? What's going on?" And Detective Burton reiterated, "Well I have to make sure . . . You understand your rights, right?" Defendant replied, "Yes, ma'am." Detective Burton then explained that she had some questions about the house and "stuff like that" but reiterated that "you're in custody so I have to make sure you understand your rights and that I can ask you the questions and you're willing to talk to me." Defendant said "Okay" and Detective Burton began questioning him.

During this interview in the police car, Defendant told Detective Burton about cars and other property that he had stolen. Detective Burton had previously obtained a state court search

2

warrant for the residence where Defendant had been located, and after she concluded her initial questioning Defendant was transported to the APD substation while Detective Burton and other law enforcement officers searched the house where Defendant had been staying. They found a semi-automatic pistol inside the residence. Detective Burton and Detective Tommy Benavidez then went to question Defendant for a second time at the substation. Detective Burton did not read Defendant his *Miranda* rights again at that point, but said "you were read your rights out at the scene. I read your rights out at the scene?" Defendant said yes, and Detective Burton asked, "you understand your rights still?" Defendant replied, "yes, ma'am." Detective Burton and Detective Benavidez then began questioning Defendant about property that had been found in the house, including the firearm. Detective Burton testified that Defendant's demeanor at this second interview was similar to the first interview, and she did not believe that the passage of more time since the gas was used on Defendant had resulted in any changed effects. Defendant told them that the gun was his, that he had taken it when burglarizing a vehicle, and that he had attempted to obliterate the serial number so that it would not be identifiable as stolen. Later, the detectives drove Defendant around several neighborhoods and Defendant identified locations where he had stolen cars and other property. At no time was Defendant given any further *Miranda* warnings.

Defendant was arrested and charged by indictment with one count of being a felon in possession of a firearm. He now argues that the *Miranda* warnings he was given while in custody were inadequate, and asks the Court to suppress all statements he made in response to questioning by law enforcement. The United States responds that Defendant was adequately advised of his Fifth Amendment rights but he knowingly, intelligently, and voluntarily waived them.

## II.     DISCUSSION

The Fifth Amendment guarantees the right of an accused to avoid self-incrimination. U.S. Const. amend. V. An individual in custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Custodial statements obtained through interrogation are inadmissible unless the accused received the *Miranda* warnings and voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Id.* at 444, 479.

"The four warnings *Miranda* requires are invariable, but [the Supreme] Court has not dictated the words in which the essential information must be conveyed." *Florida v. Powell*, 559 U.S. 50, 60 (2010). "In determining whether police officers adequately conveyed the four warnings, . . . reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Id.* (internal brackets and quotation marks omitted).

> What Miranda does require is meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.
>
> It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning.

*Coyote v. United States*, 380 F.2d 305 (10th Cir. 1967) (internal citation omitted).

Defendant argues that Officer Burton's paraphrasing of *Miranda* failed to adequately inform Defendant that he had the right to an attorney prior to any questioning. Mot. at 2. Defendant relies on the officer's convoluted statement that "Uh, at any time during questioning you want to answer my questions without an attorney present, you can put your rights into effect and at any time . . . as far as us, if you want a lawyer at any time, and you wanted to cease ah, questions to stop . . . we can do that at any time." Defendant contends (1) that this language assumes that questioning will begin, negating Defendant's right to remain silent; (2) that it does not specifically state that Defendant has the right to an attorney; and (3) that it is generally incoherent. Defendant argues that the second "and" in the sentence conditions the presence of an attorney on the ending of any questioning, thereby failing to convey Defendant's right to the presence of an attorney during questioning. He asserts that the resulting ambiguity did not effectively communicate the nature of Defendant's rights and that suppression of Defendant's subsequent statements is therefore required. The United States maintains that the warnings given to Defendant substantively complied with *Miranda* and that Defendant's conduct and express statements in response to these warnings demonstrate that he knowingly, intelligently, and voluntarily waived his Fifth Amendment rights.

In *Powell*, the defendant had been informed that:

> "You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview."

*Powell*, 559 U.S. at 54. The defendant argued that the formulation of these statements failed to adequately convey his right to the presence of an attorney during questioning, since they only mentioned an attorney before interrogation began. But the Supreme Court rejected this argument

5

and held that the combination of the officers' statements that the defendant had a right to talk to a lawyer before answering questions and a right to use any of his rights at any time during the interview "reasonably conveyed [the defendant's] right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 62. Defendant characterizes his situation as "strikingly different" from *Powell* because he was not specifically advised that he had the right to an attorney and because the sentence structure of the warnings given implied that he did not have the right to an attorney before or during questioning, but only if questioning were to stop. Mot. at 5.

Both the Court and the United States agree with Defendant that the grammar used by Detective Burton was convoluted. Nevertheless, the Court finds that the language Detective Burton used reasonably conveyed Defendant's right to a lawyer at any time as required by *Powell*. Defendant was specifically told that an attorney would be appointed for him at no cost if he could not afford to retain his own, and that if he wanted a lawyer at any time "we can do that." The warnings given did not associate the right to a lawyer only with some future time after interrogation, such as at a court appearance. *See California v. Prysock*, 453 U.S. 355, 360 (1981) (per curium). Detective Burton's statement that "at any time during questioning you want to answer my questions without an attorney present, you can put your rights into effect and at any time" implies that should Defendant choose to answer questions without waiting for an attorney, he could change his mind at any time and either request an attorney or remain silent. Although the options of having a lawyer and for questioning to cease are contained in the same sentence, it is counterintuitive to interpret this to mean that a lawyer will only be present when questioning stops, rather than during questioning, given the repetition of the phrase "at any time." As in

*Powell*, this language reasonably conveys Defendant's right to have an attorney present at all times.

Further, the Court finds that Defendant voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. An effective waiver need not be express; it may be inferred from conduct or words. *United States v. Nelson*, 450 F.3d 1201, 1211 (10th Cir. 2006). Courts evaluate whether a waiver has occurred under the totality of the circumstances. *See Smith v. Duckworth*, 824 F.3d 1233, 1247 (10th Cir. 2016). Defendant expressly affirmed to Detective Burton at least three times that he understood his rights, and he has not presented any evidence suggesting otherwise. At the April 23, 2018 hearing on Defendant's Motion, Detective Burton testified that Defendant was approximately 33 years old when he was arrested, that he appeared to answer questions intelligently, and that he had been arrested previously on multiple occasions. *See Mitchell v. Gibson*, 262 F.3d 1036, 1058 (10th Cir. 2001) (considering a defendant's prior experience in the criminal justice system as part of the totality of the circumstances demonstrating that defendant knew his rights). The recording of the interrogation reflects that Detective Burton questioned Defendant in a normal, nonthreatening tone of voice and never threatened Defendant. Accordingly, the Court concludes that Defendant's conduct in choosing to answer Detective Burton's questions constitutes a valid waiver of his Fifth Amendment rights. Under these circumstances, suppression of Defendant's statements is not warranted.

IT IS THEREFORE ORDERED that Defendant's MOTION TO SUPPRESS STATEMENT (Doc. No. 24) is DENIED.

*[signature: James A. Parker]*
SENIOR UNITED STATES DISTRICT JUDGE